UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

WILLIAM WILDER,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )        No. 2:22-cv-00463-JPH-MJD
                                         )
CENTURION HEALTH SERVICES, LLC, et )
al.,                                     )
                                         )
                    Defendants.          )

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN
PART AND DIRECTING PLAINTIFF TO SHOW WHY SUMMARY JUDGMENT
SHOULD NOT ENTER IN FAVOR OF DEFENDANT DENNIS MEYER**

William Wilder, who is incarcerated by the Indiana Department of

Correction ("IDOC") at Wabash Valley Correctional Facility, alleges that the

defendants were deliberately indifferent to his painful tooth that needed

extraction.  Defendants Monica Vance, Rebecca Werner, Sara Bedwell,

Centurion Health of Indiana, LLC, Bobbi Riggs, and Lesa Wolfe have moved for

summary judgment.  Dkts. [99], [103].  For the reasons below, the defendants'

motions are **GRANTED in part and DENIED in part**, and Mr. Wilder is

directed to show why summary judgment should not enter in favor of

defendant Dennis Meyer.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is

unnecessary because there is no genuine dispute as to any material fact and,

instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ.

P. 56(a).  When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to

the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. Centurion's Dental Care During the Time at Issue

Mr. Wilder was incarcerated at Wabash Valley during the relevant time. *See* dkt. 34. Between August 16, 2021, and March 1, 2022, Dr. Whitney Moore was the Statewide Dental Director for Defendant Centurion. Dkt. 104-2 ¶ 6 (Moore Aff.). Her job was to manage dental treatment for the IDOC. *Id.* During that time, the practice of dentistry was affected by the COVID-19 pandemic, and the American Dental Association ("ADA") recommended that dentists close their practices to all but emergency care. *Id.* ¶¶ 7–8. Dental emergencies were defined as potentially life-threatening conditions that required immediate treatment to stop ongoing tissue bleeding, alleviate severe pain or infection, or prevent airway obstruction, among other things. *Id.* ¶ 8. In contrast, urgent conditions, rather than emergency conditions, were advised to be treated as minimally invasively as possible. *Id.* ¶ 9. These urgent conditions included, among other things, tooth fractures resulting in pain or causing soft tissue trauma. *Id.* When Dr. Moore started her job as Dental Director, the COVID-19 pandemic had already created a large statewide backlog of health care requests across all IDOC facilities, including Wabash Valley, because of the ADA guidance. *Id.* ¶¶ 10–11.

In November 2021, January 2022, and February 2022, Wabash Valley was often quarantined because of the pandemic. *Id.* ¶ 13. Urgent dental conditions were treated with minimally invasive care, including treatment in

cells during the COVID-19 lockdowns.  *Id.*  In addition, the pandemic led to statewide staffing shortages and difficulties in placing dentists at IDOC facilities, including Wabash Valley.  *Id.* ¶ 14.  On September 4, 2021, Wabash Valley was the IDOC facility with the most critical need for dental staffing.  *Id.* ¶ 15.

Dr. Moore directed Centurion dental staff statewide to assist with the backlog of dental health care requests while continuing to try to find more dentists.  *Id.* ¶ 16.  She personally started off the rotation of dental coverage at Wabash Valley and coordinated the rotation of other dentists to cover dental needs for Wabash Valley.  *Id.*

Between October 8, 2021, and June 17, 2022, Dr. Moore oversaw recruitment efforts for placement of dentists at IDOC facilities, including Wabash Valley.  *Id.* ¶ 17.  Her office sent 9,702 text messages and 7,844 emails in coordination with the Indiana Dentistry Board to try to recruit approximately 18,479 dentists, but they received no responses.  *Id.*

**B. Mr. Wilder's Dental Issues**

Mr. Wilder first submitted a Healthcare Request Form ("HCR") on July 14, 2021, asking to have a tooth pulled before it got infected and started hurting.  Dkt. 111 at 6.  There is no designated evidence regarding who reviewed this HCR or what action was taken on it, if any.  Several weeks later, on August 2, Mr. Wilder filed another HCR about the same tooth, stating that the condition was "extremely painful," a "nine (9) out of ten (10) on the spectrum of pain," and that he considered the condition to be an emergency.

4

*Id.* at 13.  Several weeks after that, Mr. Wilder filed another HCR about the same tooth, stating that this was his third request to have the tooth pulled and that it was "hurting more + more each time I eat."  *Id.* at 14.  During a visit with nursing staff on August 25, he stated, "It's like the nerve is exposed."  *Id.* at 15.

On September 17, 2021, Mr. Wilder filed an HCR stating that this was his fourth request, that in "over 2 months I've never seen a dentist.  I'm in extreme pain.  It's painful to eat or drink.  It hurts so bad that I wake up in the middle of the night feeling like I'm going to puke.  I can only take so much pain reliefs."  *Id.* at 17.  He filed another HCR on September 19, *id.* at 18, and on September 21, he filed an HCR, stating "I'm in a lot of pain all the time.  I have pain reliefs (325 mg) from commissary [and] to dull the pain I take almost 25 tablets a day."  *Id.* at 19.

Mr. Wilder submitted a grievance on September 23, which was returned to him with the explanation "as of right now we do not have a dentist on the facility grounds."  *Id.* at 29.  Mr. Wilder was seen again by medical nursing staff on September 24, 2021, who referred him to dental.  *Id.* at 20–21.  The next day he filed another HCR thanking medical staff for the stronger pain relief but stated that it "does no more than dull the pain to a small degree" and that "The degree of pain I am experiencing is absolutely devastating."  *Id.* at 23.

Throughout this timeframe of July 14 through the end of September, medical nursing staff periodically met with Mr. Wilder and prescribed him pain medication.  Most of Mr. Wilder's requests appear to have been forwarded by

medical staff to dental staff where they were reviewed and logged by a dental assistant, either Judy Rexroat or Julie Atkinson, so that Mr. Wilder could be scheduled to see a dentist consistent with the prioritization plan. Dkt. 104-2 ¶¶ 22–24. Ms. Rexroat's initials appear at the end of the Dental Summary Report entry, indicating that she was the dental staff member who received and triaged the HCR.[1] *Id.* ¶ 23.

Mr. Wilder was finally seen by a dentist, Dr. Werner, on October 14, 2021. *Id.* ¶ 24. Dr. Werner was not a dentist on staff at Wabash Valley during the relevant time and provided dental care there only after Dr. Moore emailed her asking to volunteer. Dkt. 101-3 ¶¶ 3–4 (Werner Aff.). Dr. Werner worked at Wabash Valley between about October 11, 2021, and October 15, 2021. *Id.* ¶¶ 4, 16. She was not involved in scheduling prisoners for dental treatment at Wabash Valley and did not see HCRs until the inmate was brought to the dental office. *Id.* ¶¶ 5–6. Thus, she was not aware of Mr. Wilder's complaints until she evaluated him on October 14, 2021. *Id.* ¶ 9.

During the appointment on October 14, Dr. Werner took an x-ray and applied a local anesthetic, intending to extract the painful tooth. *Id.* ¶ 10. But because the anesthesia was not completely effective, Dr. Werner did not extract the tooth. *Id.* In addition, because the anesthesia failed, Dr. Werner concluded

---

[1] Dr. Dennis Meyer's name appears in the "Provider" column only because dental assistants are not licensed providers, and the IDOC computerized record system required that a provider name be included as part of any entry a dental assistant made to the patient's chart. *Id.* Dr. Meyer's name was used as a placeholder during that time because the rotational schedule of dentists at Wabash Valley did not allow for new dental assistant entries to be assigned to a particular dentist. *Id.*

that Mr. Wilder had an infection that would need to be treated with antibiotics, which had to be completed before the tooth could be removed. *Id.* ¶ 11–12. She noted in his medical records that he should resubmit an HCR if he needed additional care. Dkt. 101-2 at 2.

Mr. Wilder started resubmitting HCRs after completing the antibiotics. Dkt. 104-1 at 2. Medical staff forwarded Mr. Wilder's HCR to dental staff on November 23, 2021, where Ms. Rexroat reviewed and logged it. *Id.*

On April 11, 2022, Mr. Wilder made another request to have his painful tooth extracted. *Id.* at 2. That month, Dr. Vance had begun working as a travelling dentist treating inmates at several prisons in Indiana. Dkt. 101-4 ¶ 3 (Vance Aff.). During the time at issue, Dr. Vance travelled to Wabash Valley twice a week to provide dental care. *Id.* ¶ 5. She was not involved in scheduling dental appointments. *Id.* ¶ 6. Mr. Wilder was scheduled for a May 18, 2022, appointment with Dr. Vance, but a correctional officer told her that day that Mr. Wilder had been "red-tagged," which meant he had been placed on custodial restrictions and could not be escorted to the dental unit. *Id.* ¶¶ 11–12. Because the dental office did not know when the red tag status would be removed, Mr. Wilder could not be rescheduled for treatment. *Id.* ¶ 13.

Mr. Wilder filed another HCR on October 12, 2022. *Id.* ¶ 14. He then filed a motion for a preliminary injunction in this case on October 26. Dkt. 5. Shortly thereafter, he was scheduled for an appointment with Dr. Vance on November 1, but when he had his appointment that day, he had an infection requiring treatment before extraction of the tooth. Dkt. 101-4 ¶ 16. Dr. Vance

7

prescribed antibiotics and then extracted the tooth on November 10, 2022.  *Id.*
¶¶ 16, 18, 20.

### C. Defendants Riggs, Wolfe, and Bedwell

Defendants Bobbi Riggs, Lesa Wolfe, and Sara Bedwell were not
authorized to schedule dental procedures or order dental treatment.  Dkt. 104-
2 ¶ 34.  Centurion's medical staff at Wabash Valley appear to have referred
most of Mr. Wilder's HCRs requesting dental treatment to dental staff so that
dental assistants could review them and schedule follow-up as appropriate.  *Id.*
Ms. Riggs was not responsible for responding to requests for dental treatment.
*Id.*

### III.
### Discussion

Mr. Wilder argues that the individual defendants were deliberately
indifferent to his serious medical needs.  He further contends that Centurion
had adopted deliberate and systemic policies and practices that resulted in a
timeframe of several months during which dental care was completely
unavailable to inmates at Wabash Valley, including those who had urgent
dental care needs and were experiencing substantial pain.

The Eighth Amendment's prohibition against cruel and unusual
punishment imposes a duty on the states, through the Fourteenth
Amendment, "to provide adequate medical care to incarcerated individuals."
*Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429
U.S. 97, 103 (1976)).  "Prison officials can be liable for violating the Eighth
Amendment when they display deliberate indifference towards an objectively

8

serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Wilder's painful tooth was objectively serious. To avoid summary judgment, then, the designated evidence must allow a reasonable jury to conclude that the defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Wilder]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Wilder "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

**A. Dr. Werner**

Dr. Werner argues that she is entitled to summary judgment because she was not aware that Mr. Wilder needed dental care until she saw him on October 14, 2021, and that she provided him with appropriate treatment that day.

Dr. Werner provided volunteer dental services at Wabash Valley between about October 11, 2021 and October 15, 2021. Dkt. 101-3 ¶ 4, 16. She was

9

not responsible for scheduling appointments and did not see patients' HCRs before their dental appointments. *Id.* ¶ 5–6. Further, when she saw Mr. Wilder on October 14, she treated him with antibiotics and advised him to submit a further HCR if necessary. Dkt. 101-2 at 2.

Mr. Wilder argues that Dr. Werner should have known of his pain because it was documented in his dental records, but he designates no evidence that she saw those records before his appointment. He also argues that she exhibited deliberate indifference when she failed to provide a written treatment plan as required by policy and failed to schedule a follow-up appointment. But this is belied by Defendants' designated evidence which shows that Dr. Werner did provide a treatment plan by prescribing antibiotics and directing Mr. Wilder to submit an HCR for further treatment. Dkt. 101-2 at 1–2. Mr. Wilder argues that directing him to submit an HCR was not enough and that she should have ensured that he receive follow-up care. But Dr. Werner spent only a few days at Wabash Valley, and Mr. Wilder designates no evidence that Dr. Werner had any reason to believe that Mr. Wilder would not receive follow-up care if he asked for it.

Based on the undisputed evidence that Dr. Werner provided Mr. Wilder with treatment when she saw him and directed him to seek more treatment if he needed it, no jury could conclude that Dr. Werner was deliberately indifferent to Mr. Wilder's dental needs. She is therefore entitled to summary judgment on Mr. Wilder's claims.

**B. Dr. Vance**

Dr. Vance argues there is no evidence that she knew about Mr. Werner's tooth pain before she was to see him for a dental appointment or that she was deliberately indifferent to his condition after she became aware of it.

Dr. Vance did not provide dental care to inmates at Wabash Valley until April 2022. Dkt. 101-4 ¶ 3. As a travelling dentist, she did not schedule prisoners for dental treatment. *Id.* ¶ 6. Further, like Dr. Werner, Dr. Vance did not see HCRs until the patient presented (or failed to present) to the dental office on the day of their appointment. *Id.* ¶ 8. Thus, Dr. Vance was not aware of Mr. Wilder's dental complaints until his missed appointment on May 18, 2022. *Id.* ¶ 10–12. That day, she was told he could not be transferred to the dental unit or be rescheduled because of his red tag status. *Id.* ¶ 11–13.

Dr. Vance then saw Mr. Wilder on November 1, 2022, for his request for extraction but she could not extract the tooth because of an infection. Dkt. 104-1 at 2; dkt. 101-4 ¶ 16. She prescribed antibiotics to treat the infection and ensured he was placed on the extraction list after the antibiotics were finished. Dkt. 104-1 at 2; dkt. 101-4 ¶ 16. She did successfully extract the tooth on November 10. Dkt. 101-4 ¶ 20.

In short, when she saw him for dental care, Dr. Vance treated Mr. Wilder for his infection and later extracted his tooth. Mr. Wilder argues that, even though he was on red tag status when he was scheduled for his first appointment with Dr. Vance, dental policy required that he not be denied access to care. But he has designated no evidence that Dr. Vance had any

11

control over whether inmates were brought to have dental care while on "red tag" status.  Nor has he designated evidence that would allow a jury to conclude that Dr. Vance was deliberately indifferent to Mr. Wilder's need for dental care.  Dr. Vance is therefore entitled to summary judgment.

### C. Bobbi Riggs

Ms. Riggs argues that she is entitled to summary judgment because Mr. Wilder has designated no evidence that she was personally involved in Mr. Wilder's dental care.

"[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault.  An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . .  A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

It is undisputed that Ms. Riggs had no authority to schedule dental procedures or order dental treatment.  Dkt. 104-2 ¶ 4.  Although Mr. Wilder argues that Ms. Riggs was responsible for or could have ensured that he receive treatment, there is no designated evidence that she was involved in Mr. Wilder's dental care at all.  Therefore, Ms. Riggs is entitled to summary judgment.

12

### D. Lesa Wolfe

Ms. Wolfe had no authority to schedule dental procedures or order dental treatment.  Dkt. 104-2 ¶ 4.  She interacted with Mr. Wilder regarding his dental pain once, when she saw him on August 25, 2021, and referred him to dental.  Dkt. 104-1 at 12–13.  Ms. Atkinson confirmed receipt of the referral the next day.  *Id.* at 1.

The undisputed evidence therefore shows that when Ms. Wolfe was made aware of Mr. Wilder's dental issues, she took appropriate action by referring him to the dental office.  Mr. Wilder has designated no evidence that Ms. Wolfe had any further role in his dental care or any further authority to treat him or schedule dental appointments.  There is therefore no evidence that Ms. Wolfe was deliberately indifferent to a substantial risk to Mr. Wilder's dental needs. She is therefore entitled to summary judgment.

### E. Sara Bedwell

Mr. Wilder alleges that Ms. Bedwell was deliberately indifferent "by not providing the treatment when required or scheduling follow-up visits to get his tooth pulled and prevent undue pain and suffering."  Dkt. 34 at 6 ¶ 3.  He fails to designate evidence, however, from which a jury could reasonably reach that conclusion.

Ms. Bedwell had no authority to schedule dental procedures or order dental treatment.  Dkt. 104-2 ¶ 4.  Her affidavit, which was filed in response to Mr. Wilder's motion for a preliminary injunction, states that, in her "role as Health Services Administrator, [she has] direct involvement in the provision of

13

support services and administrative assistance regarding treatment provided to [Mr. Wilder] for an infected tooth requiring extraction, and I am generally familiar with the nature and history of Mr. Wilder's dental issue and attempts to treat it." Dkt. 25-1 ¶ 3. The affidavit focuses on Ms. Bedwell's role with respect to the November 10 extraction. *See generally* dkt. 25-1. Mr. Wilder designates no evidence to allow an inference that Ms. Bedwell was aware of, or involved in, the treatment of his tooth before it was extracted in November of 2022. Thus, no jury could conclude that Ms. Bedwell knew that Mr. Wilder needed dental care before that time and disregarded that need. She is entitled to summary judgment.

## F. Centurion

Private corporations acting under color of state law are treated as municipalities for purposes of § 1983. *Dean*, 18 F.4th at 235. Section 1983 generally does not allow a municipality or corporation to be held liable for the actions of its agents or employees. As the Seventh Circuit has explained:

> There are at least three types of municipal action that may give rise to municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.

*Id.* "[I]f institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Glisson v. Ind. Dep't. of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc).

To establish *Monell* liability here, a reasonable jury must be able to find from the designated evidence that Wabash Valley's dental care system suffered from "systemic and gross deficiencies in staffing, facilities, equipment, or procedures." *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016). Mr. Wilder must then "show that a policymaker or official knew about these deficiencies and failed to correct them." *Id.*; *see also Glisson*, 849 F.3d at 381–82.

Here, Mr. Wilder argues that Centurion had a policy of making prisoners wait for dental care regardless of the severity of the condition or the amount of pain the prisoner was experiencing. Dkt. 110 at 16. Centurion argues that any delay in Mr. Wilder's treatment was not intentional or a matter of unconstitutional corporate policy or practice. Instead, Centurion contends that the delay in treating Mr. Wilder was the result of numerous factors, including a backlog of appointments and treatment caused by COVID-19, the need to prioritize patients needing treatment for issues varying in degrees of seriousness, Mr. Wilder's inability to achieve anesthesia during the first attempt at tooth extraction, Mr. Wilder's "red-tag" status in the spring and summer of 2022, and the lack of any subsequent HCRs submitted until October 2022. Dkt. 105 at 9.

Centurion compares Mr. Wilder's claims to those in *Upshaw v. Vanihel, et al.*, 2:22-cv-116-JRS-MJD (S.D. Ind.). There, the plaintiff also alleged that Centurion's policies caused him to experience delays in dental care. The Court held that the evidence presented by Centurion demonstrated that any delay

15

was caused by the limitations on dental care imposed by the COVID-19 pandemic. *Upshaw*, 2:22-cv-116-JRS-MJD, dkt. 28 at 9. *Upshaw* addressed a claim based on dental care provided at Wabash Valley between November 2021 and February 2022. But Mr. Wilder's claims, in part, predate the *Upshaw* timeframe. So, the question here is whether a reasonable jury could find that by allowing a lack of available dental care at Wabash Valley to persist between July and October 2021, Centurion exhibited deliberate indifference towards inmates suffering from extreme dental pain.

The designated evidence here shows that there was no dentist on-site at Wabash Valley when Mr. Wilder first complained of tooth pain in July of 2021. *See* dkt. 111 at 29. Furthermore, taken in the light most favorable to Mr. Wilder, the designated evidence does not show that between July and October 2021 Centurion provided dental care to any inmates who informed Centurion that they were experiencing extreme pain due to a serious dental condition. Centurion designates evidence generally that it "prioritize[d] patients needing treatment for issues varying in degrees of seriousness," suggesting any triaging it did was based on the ADA's pandemic guidance. Dkt. 104-2 ¶ 8, 33. But that triaging approach did not result in dental care for patients like Mr. Wilder, whose dental condition caused extreme pain yet may not have qualified under the ADA guidance's definition of a dental emergency. So from this evidence, a reasonable jury could conclude that Centurion's failure to have a dentist available at Wabash Valley and implement triaging policies sufficient to address inmates' extreme dental pain constituted "systemic and gross

16

deficiencies in staffing [and] procedures." *Daniel*, 833 F.3d at 735; *see also Glisson*, 849 F.3d at 381 (holding that "the failure to make policy" may constitute an actionable *Monell* claim).

Next, a reasonable jury could conclude that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel*, 833 F.3d at 735. The designated evidence shows that in early September 2021, Dr. Moore—Centurion's statewide dental director—identified Wabash Valley as "the IDOC facility with the most critical need for dental staffing" as part of a broader attempt to address the large backlog of dental HCRs by rotating dentists through Wabash Valley. Dkt. 104-2 ¶ 15. And the evidence shows that between October 2021 and June 2022, Dr. Moore oversaw recruitment efforts to place more dentists in IDOC facilities, including Wabash Valley. *Id.* ¶ 17.

From the designated evidence, a jury could reasonably find that Centurion was on notice of Wabash Valley's lack of available dental care from July to October 2021. And a reasonable jury could conclude that in response, Centurion failed to "take reasonable corrective action." *Daniel*, 833 F.3d at 735. To the extent dentists rotated through Wabash Valley between July and October 2021, a reasonable jury could conclude that this corrective action was not sufficient. For example, Mr. Wilder submitted a grievance on September 23, which was returned to him with the explanation "as of right now we do not have a dentist on the facility grounds." Dkt. 111 at 29. A reasonable jury could infer from that response that even if some dentists did rotate through Wabash Valley from July to October 2021, those dentists were not addressing

17

the extreme pain of inmates like Mr. Wilder.  In sum, a reasonable jury could conclude from this evidence that Centurion was on notice of the lack of dental care available at Wabash Valley but did not take reasonable corrective action to address it.

Finally, a reasonable jury could conclude from the designated evidence that Mr. Wilder's "poor treatment was the likely result" of the lack of dental care offered at Wabash Valley from July through October 2021.  *Daniel*, 833 F.3d at 736.  Mr. Wilder submitted an HCR on July 14, 2021, asking to have a tooth pulled before it got infected and started hurting.  Dkt. 111 at 6.  Several weeks later, on August 2, Mr. Wilder filed another HCR about the same tooth, stating that the condition was "extremely painful," a "nine (9) out of ten (10) on the spectrum of pain," and that he considered the condition to be an emergency.  Dkt. 111 at 13.  Between then and when Mr. Wilder was finally seen by a dentist on October 14, he had filed several more HCRs, informing medical staff:

- that the tooth was "hurting more + more each time I eat."  *Id.* at 14;

- "It's like the nerve is exposed."  *Id.* at 15;

- that in "over 2 months I've never seen a dentist.  I'm in extreme pain.  It's painful to eat or drink.  It hurts so bad that I wake up in the middle of the night feeling like I'm going to puke.  I can only take so much pain reliefs."  *Id.* at 17;

18

- "I'm in a lot of pain all the time.  I have pain reliefs (325 mg) from commissary [and] to dull the pain I take almost 25 tablets a day."  *Id.* at 19;

- that the stronger pain relief "does no more than dull the pain to a small degree" and that "[t]he degree of pain I am experiencing is absolutely devastating."  *Id.* at 23.

Mr. Wilder finally had an appointment with a dentist on October 14. Dkt. 101-2 at 2.  By then, Mr. Wilder's tooth was infected and could not be extracted.  *Id.*  A reasonable jury could conclude from this evidence that Centurion's triaging policy from July to October 2021 was the "moving force" behind Mr. Wilder's prolonged and extreme dental pain.  *See Dean*, 18 F.4th at 235.

The Constitution requires Centurion "to ensure that a well-recognized risk for a defined class of prisoners not be deliberately left to happenstance." *Glisson*, 849 F.3d at 382.  From the designated evidence, a reasonable jury could find, as Centurion argues, that the delay in treating Mr. Wilder's dental condition was due to a backlog of appointments and treatment caused by COVID-19, the need to triage patient appointments based on severity of condition and need, and other factors.  Dkt. 105 at 9.  But a reasonable jury could instead find that Mr. Wilder's known serious and painful dental condition went untreated for months because there was no dentist onsite and no articulated plan for treating the severe, painful dental condition of any inmate whose condition did not meet the ADA definition of "dental emergency."  And

19

from that finding, a reasonable jury could conclude that Centurion's failure to implement a sufficient policy exhibited deliberate indifference to Mr. Wilder's serious medical needs that caused him ongoing pain.

### G. Dr. Meyer

Finally, although the Court permitted claims to proceed against dentist Dr. Dennis Meyer and Dr. Meyer has not filed a motion for summary judgment, the designated evidence reflects that Dr. Meyer had no role in Mr. Wilder's dental care during the time at issue and that his name appears on Mr. Wilder's dental records only as a placeholder. Dkt. 104-2 ¶ 23. Therefore, under Rule 56(f)(1), the Court gives Mr. Wilder notice of its intent to grant summary judgment in favor of Dr. Meyer. Mr. Wilder shall have **twenty-eight days** to respond to this notice by designating specific evidence that Dr. Meyer was deliberately indifferent to his need for dental care.

### IV.
### Conclusion and Further Proceedings

The motion for summary judgment filed by Monica Vance and Rebecca Werner, dkt. [99], is **GRANTED**. The other motion for summary judgment, dkt. [103], is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to Sara Bedwell, Bobbi Riggs, and Lesa Wolfe, and **DENIED** as to Centurion Health of Indiana, LLC. The **clerk shall terminate** Monica Vance, Rebecca Werner, Sara Bedwell, Bobbi Riggs, and Lesa Wolfe on the docket.

The motion to strike Mr. Wilder's sur-reply, dkt. [116], is **DENIED** to the extent the Court has considered the arguments made in the sur-reply and find they do not change this Order's outcome.

20

As discussed above, Mr. Wilder shall have **twenty-eight days** to show why summary judgment should not also issue in Dr. Meyer's favor.  Failure to respond will result in the issuance of summary judgment for Dr. Meyer.

The Court prefers that Mr. Wilder be represented by counsel for the remainder of this action.  The **clerk is directed** to send Mr. Wilder a motion for assistance recruiting counsel with his copy of this Order.  Mr. Wilder has **twenty-eight days** to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se.  Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

No partial final judgment shall issue as to the claims resolved in this Order.

**SO ORDERED.**

Date: 3/14/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

WILLIAM WILDER
104521
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

DENNIS MEYER
P.O. Box 245
Wheatland, IN 47597

All Electronically Registered Counsel